vessel at quarantine, are entitled to be paid previous to the claims of the consignee for duties paid on the cargo. Had the government sought satisfaction of duties out of the fund in court, its demand must have been paid in preference to the claims of the material men. The duties had accrued and become payable before the debts to the material men were incurred. The government, therefore, stood first in equity, independent of the consideration of its prerogative rights. It is not necessary to inquire what would have been the rule had the liens of the material men existed when the vessel came into port. Their credits were given to the vessel after she had become chargeable with duties, and, as against the government, they could not equitably ask to have that liability postponed on their account, as their services were not necessary to put the vessel in a situation to create and incur those duties. She had completed her voyage when their debts were incurred. But the consignee of the ship only cannot possess himself of the advantage of the government priority. No act of congress transfers that privilege to a party who receives the ship or cargo, and discharges the duties. Such payment by him would be esteemed voluntary, or to have been made out of funds of the consignor. In this instance, the consignee has not the equity of a consignee or shipper of goods who could not land the cargo without satisfying the duties. In such a case, the cargo might be perishable, and he might be compelled to make the advance immediately. Here the vessel was in ballast, and the consignee could pay, or omit to pay, at his option. Although the court might refuse to pay over the fund to the owner, before this demand was satisfied, yet the consignee is not entitled to any priority over other creditors in its distribution here.

4. It is contended, that all necessary parties who have been brought into court by force of the proceedings here, are entitled to their costs out of the fund. The intervention of all the parties has been voluntary. No one has been coerced to appear. It is, therefore, unnecessary to inquire what remedy the court would afford a party who had been wrongfully compelled to appear and answer. Where no attachment against the person is sued out by the promovent in an admiralty cause, it is wholly optional with parties whether they intervene or not. If they make themselves parties, it is to protect or enforce some right of their own in the subject matter of the suit. Their relief in regard to costs, then, ought to be only commensurate with and dependent upon their relief in regard to the subject of contestation. That rule will accordingly be now observed. The seamen will recover their wages and costs in full, the material men their demands and costs out of the residue, and the balance, if any, may be paid over to the consignee.

Let the clerk report the amount due to the respective parties, and tax the costs, and, on the confirmation of his report, let payment be made in conformity to these principles.

---

RODNEY (HURST v.). See Case No. 6,938.

RODOCANACHI v. The OREGON. See Case No. 13,178.

RODOCANACHI (SOULE v.). See Case No. 13,178.

RODRIGUEZ (ALEXANDER v.). See Case No. 172.

---

## Case No. 11,994.

### RODRIGUEZ v. UNITED STATES.

[The case reported under above title in Hoff. Land Cas. 175, is the same as Case No. 16,-181.]

---

RODRIGUEZ (UNITED STATES v.). See Cases Nos. 16,181–16,185.

ROE (DUSSERT v.). See Case No. 4,200.

ROE (ROBERTSON v.). See Case No. 11,-927.

---

## Case No. 11,995.

### Ex parte ROELKER.

[1 Spr. 276.] [1]

District Court, D. Massachusetts. Dec., 1854.

INTERPRETER—COMPULSORY ATTENDANCE.

1. The court will not compel the attendance of an interpreter, or expert, who has neglected to obey a subpoena, unless in case of necessity.
[Cited in Buchman v. State, 59 Ind. 6. Quoted in Ex parte Dement, 53 Ala. 389.]

2. Semble. That a person may be compelled to attend, as an interpreter, in case no other can be obtained to perform that office.
[Quoted in Ex parte Dement, 53 Ala. 389.]

During a trial, upon an indictment, Hallett, district attorney, stated to the court that he had several witnesses for the government, who spoke only the German language; that a subpoena had been served on Mr. Roelker, as an interpreter, but he had neglected or refused to attend; and he moved for a capias to bring him in.

SPRAGUE, District Judge, said, that a similar question had heretofore arisen as to experts, and he had declined to issue process to arrest, in such cases. When a person has knowledge of any fact pertinent to an issue to be tried, he may be compelled to attend, as a witness. In this, all stand upon equal ground. But to compel a person to attend, merely because he is accomplished in a particular science, art, or profession, would subject the same individual to be called upon, in every cause in which any question in his department of knowledge is to be solved. Thus, the most eminent physician might be compelled, merely for the ordinary witness fees,

[1] [Reported by F. E. Parker. Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission.]